IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VINCENT J. COX, | ) | CASE NO. 5:16CV36 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |
| Defendant. | ) | |

Plaintiff Vincent Cox ("Cox") seeks judicial review of the final decision of Defendant
Commissioner of Social Security ("Commissioner") denying his application for Disability
Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  Doc. 1.  This Court has
jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned Magistrate
Judge pursuant to the consent of the parties.  Doc. 14.

Cox's principal arguments are that he is entitled to a Sentence Six remand for
consideration of new evidence by the ALJ and that the Appeals Council failed to articulate its
reasons when denying his request for review.  However, Cox does not meet the requirements for
a Sentence Six remand and the Appeals Council was not required to articulate its reasons when it
denied his request for review.  For that and the additional reasons stated below, the
Commissioner's decision is **AFFIRMED**.

## I. Procedural History

On March 20, 2012, Cox protectively filed an application for DIB and SSI, alleging a
disability onset date of July 1, 2009.  Tr. 21, 215.  He alleged disability based on arthritis.  Tr.
219.  After denials by the state agency initially (Tr. 97, 98) and on reconsideration (Tr. 119,

120), Cox requested an administrative hearing.  Tr. 74-75.  A hearing was held before

Administrative Law Judge ("ALJ") James A. Hill on June 3, 2014.  Tr. 44-73.  In his June 26,

2014, decision (Tr. 21-38), the ALJ determined that that Cox could perform jobs that exist in

significant numbers in the national economy, i.e., he was not disabled.  Tr. 37.

On August 21, 2014, Cox requested review of the ALJ's decision by the Appeals Council

and requested an extension of time to submit additional evidence to the Appeals Council. Tr. 14-

17.  The Appeals Council granted Cox's request on February 10, 2015.  Tr. 7-8.  On March 22,

2015, Cox submitted his additional evidence: a Functional Capacity Evaluation (FCE) completed

by Jim Micali, PT, on July 9, 2014, and co-signed, on July 28, 2014, by Cox's treating physician,

Bernole Batenga, MD.  Tr. 276, 407-421.

On November 10, 2015, the Appeals Council denied review, making the ALJ's decision

the final decision of the Commissioner.  Tr. 1-3.

## II. Standard for Disability

Under the Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the

existence of a disability.  "Disability" is defined as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or
> mental impairment or impairments are of such severity that he is not only unable
> to do his previous work but cannot, considering his age, education, and work
> experience, engage in any other kind of substantial gainful work which exists in
> the national economy . . . .

42 U.S.C. § 423(d)(2).

2

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations.  The five steps can be summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920;[1] *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Under this sequential analysis, the claimant has the burden of proof at Steps One through Four.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  The burden shifts to the Commissioner at Step Five to establish whether the claimant has the vocational factors to perform work available in the national economy.  *Id.*

### III. The ALJ's Decision

In his June 26, 2014, decision, the ALJ made the following findings:

---

[1] The DIB and SSI regulations cited herein are generally identical.  Accordingly, for convenience, further citations to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20 C.F.R. § 404.1501 et seq.  The analogous SSI regulations are found at 20 C.F.R. § 416.901 et seq., corresponding to the last two digits of the DIB cite (i.e., 20 C.F.R. § 404.1520 corresponds to 20 C.F.R. § 416.920).

1.      The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.  Tr. 23.

2.      The claimant has not engaged in substantial gainful activity since July 1, 2009, the alleged onset date.  Tr. 23.

3.      The claimant has the following severe impairments: degenerative disc disease ("DDD") of the cervical spine, DDD of the lower thoracic spine with old compression fractures at the T11 and T12 vertebrae, DDD of the lumbar spine, and coronary artery disease status post ("s/p") drug-eluting stent placement.  Tr. 24.

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  Tr. 25.

5.      The claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except that he is further limited as follows: can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, stoop, kneel, crouch and crawl; should avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation; and should avoid concentrated exposure to hazards, such as dangerous machinery and unprotected heights.    Tr. 26.

6.      The claimant is unable to perform any past relevant work.  Tr. 36.

7.      The claimant was born on July 5, 1962 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.  When he attained the age of 50 on July 4, 202 [sic], the claimant subsequently changed age category to that of an individual closely approaching advanced age.  Tr. 37.

8.      The claimant has at least a high school education and is able to communicate in English.  Tr. 37.

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.  Tr. 37.

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.  Tr. 37.

11.     The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2009 through the date of this decision.  Tr. 38.

4

## IV. Parties' Arguments

Cox presents four enumerated grounds in his challenge to the ALJ's decision, although these arguments can be boiled down to three: (1) he is entitled to a Sentence Six remand for the ALJ to consider the new evidence that Cox submitted to the Appeals Council; i.e., the FCE signed by Cox's treating physician, Dr. Batenga; (2) the Appeals Council erred because it did not articulate its findings when it denied Cox's request for review of the ALJ's decision; and (3) the ALJ improperly relied upon the opinions of the state agency reviewers and the consultative examiner.  Doc. 15, pp. 2, 13-19.  In response, the Commissioner submits that Cox is not entitled to a Sentence Six remand, the Appeals Council was not required to articulate its findings when it denied review, and the ALJ's decision is supported by substantial evidence.  Doc. 15, pp. 8-20.

## V. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health and Human Servs.,* 889 F.2d 679, 681 (6th Cir. 1989) (per curiam) (citations omitted)).  A court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

### A.  Cox is not entitled to a Sentence Six remand

Cox argues that he is entitled to a Sentence Six remand.[2]  In a Sentence Six remand, a district court remands the case to the Commissioner for additional proceedings "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]"  42 U.S.C. § 405(g); *Faucher v. Sec'y of HHS*, 17 F.3d 171, 174 (6th Cir. 1994); *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006).  To be entitled to a Sentence Six remand, a claimant must establish that (1) the evidence is "new" or was otherwise previously unavailable to the claimant; (2) the evidence is material; and (3) good cause exists for not previously presenting the evidence to the Commissioner.  *Id*.

Cox is not entitled to a Sentence Six remand because he cannot show good cause for not previously presenting his evidence—the FCE signed by his treating physician Dr. Batenga—to the ALJ.  Cox argues that he had good cause for not obtaining and, thus, for not previously presenting, the FCE because an FCE "is a medical procedure that must be justified (to the medical insurer) and ordered by a doctor, and, accordingly, as a medical procedure, the scheduling of the FCE is outside of the control of the patient."  Doc. 15, p. 18.  He alleges that he requested an FCE on April 1, 2010, but that that the FCE was not conducted until July 9, 2014, "more than four (4) years after Mr. Cox began requesting a referral[.]"  Doc. 15, p. 17.  A review of the record, however, does not support Cox's assertion.  The evidence does show that he requested an FCE on April 1, 2010 (Tr. 328); it also shows that Dr. Batenga completed an FCE sometime prior to September 14, 2011.  *See* Tr. 325 (Dr. Batenga's treatment note dated September 14, 2011, stating "Patient had a FCE."); Tr. 371 (Dr. Batenga's treatment note dated May 3, 2012, stating, "A Functional Capacity evaluation has been completed and is in the patient documents.  It does not show major limitations."); *see also* Tr. 35 (ALJ's decision noting that Dr.

---

[2] "Sentence Six" is a reference to the specific sentence found in 42 U.S.C. § 405(g).

Batenga's FCE report was not submitted but that the record contains two narrative accounts of

the basic results: Cox had no major functional limitations but did have restrictions from "heavy

lifting/activities" due to pain).  In other words, Cox received the FCE that he requested in 2010

sometime prior to September 2011.

In his reply brief, Cox asserts that Dr. Batenga's second FCE was performed "after delays

due to insurance issues which were beyond the control of the treating physician and Plaintiff."

Doc. 18, p. 4.  He appears to back off his previous assertion that he waited four years to obtain

his FCE, but he does not present any evidence indicating when he requested his second FCE.

*See Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)("It is well

established that the party seeking remand bears the burden to show that remand is proper under

Section 405.").  At the Hearing, Cox did not tell the ALJ that he had an FCE scheduled, did not

state that he was waiting for an FCE to be scheduled, or testify that he intended to request an

FCE.  If Cox had requested an FCE he should have told the ALJ at the hearing or, if after the

hearing, asked the ALJ for additional time to keep the record open.  He did neither.  Instead, he

merely insists, in his opening brief, that he has been waiting since 2010 to obtain his FCE from

Dr. Batenga, an assertion that is belied by the record.  *See Cross v. Comm'r of Soc. Sec.*, 373

F.Supp.2d 724, 734 (N.D.Ohio 2005) (claimant did not show good cause for a Sentence Six

remand because he did not explain why he could not obtain his treating source opinion prior to

the hearing; at the hearing, his counsel did not advise the ALJ that he was trying to obtain the

opinion; and he did not request additional time to keep the record open); *Bass v. McMahon*, 499

F.3d 506, 513 (6th Cir. 2007) (no good cause could be shown when claimant's attorney failed to

seek to keep the record open to submit new evidence).  And Cox provides no evidence to support

his vague assertion advanced in his reply brief.  *Oliver*, 804 F.2d at 966 (explaining that the Sixth

Circuit takes a hard line on the good cause inquiry).

Accordingly, Cox has not demonstrated a reasonable justification for his failure to

acquire and present his second FCE to the ALJ.  *See Foster v. Halter*, 279 F.3d 348, 357 (6th

Cir. 2001) ("A claimant shows 'good cause' by demonstrating a reasonable justification for the

failure to acquire and present the evidence" to the ALJ).  He is not entitled to a Sentence Six

remand.  *Id*.

**B. The Appeals Council was not required to articulate its reasons for denying review**

Cox argues that the Appeals Council failed to adequately evaluate Dr. Batenga's FCE and

did not apply the treating physician rule as articulated in *Gayheart v. Comm'r of Soc. Sec.*, 710

F.3d 365, 376 (6th Cir. 2013).  Doc. 15, pp. 14, 16.  First, the Appeals Council's decision

denying Cox's request for review is not reviewable in this Court.  In *Marks v. Colvin*, 2016 WL

233177, at *4 (S.D.Ohio Jan. 26, 2016), the court found that the Appeals Council's decision

denying review after considering newly submitted evidence—a treating physician's residual

functional capacity opinion—was not reviewable because the Appeals Council denied the

claimant's request for review and made the new opinion part of the record; therefore, its decision

was a discretionary, non-reviewable determination.  2016 WL 233177, at * 5; *see also* 20 C.F.R.

§ 404.972 ("The dismissal of a request for Appeals Council review is binding and not subject to

further review.").

Second, Cox cites to no legal authority that the Appeals Council is required to comply

with the treating physician rule when it denies a claimant's request to review the ALJ's decision,

and legal authority indicates otherwise.  *See Meyer v. Astrue*, 662 F.3d 700, 706 (4th Cir. 2011)

(the regulations only require the Appeals Council to articulate its reasons when it grants a request

for review and issues its own decision, not when it denies a request for review); *Marks*, 2016 WL 233177, at *4 (there is no duty under § 404.1970(b) requiring the Appeals Council to articulate, in its written decision denying review, it's treatment of new evidence; "At least in this circuit, imposing such articulation requirements is the exception rather than the rule, and cases like *Wilson v. Comm'r of Social Security*, 378 F.3d 541 (6th Cir. 2004) base such a requirement on specific regulatory language of the type which does not appear in § 404.[]970(b)."); 20 C.F.R. § 404.970(b) (containing no language that the Appeals Council follow the dictates of the treating physician rule)[3]; *Graley v. Colvin*, 2015 WL 3935953, at * 14 (N.D.Ohio June 26, 2015) ("the Appeals Council is not required to make specific findings in its decision when it denies a request for review.").

   Nor was the Appeals Council required to explain its evaluation of Dr. Batenga's FCE when it denied Cox's request for review.  As discussed above, the Appeals Council is not required to articulate its reasons for denying review.  *See id*.; *Parks*, 783 F.3d 847, 853 (11th Cir. 2015) ("The Appeals Council stated that it considered the new evidence that Parks submitted, and the Appeals Council added the evidence to the record.  The Appeals Council was not required to do more."); *Mitchell v. Comm'r, Soc. Sec*., 771 F.3d 780, 783 (11th Cir. 2014) ("Nothing in *Mann*, *Epps*, or *Bowen*, however, requires the Appeals Council to provide a detailed discussion of a claimant's new evidence when denying a request for review."); *Luther v Soc. Sec*., 2016 WL 3681447, at *13 (M.D.Tenn. July 6, 2016) (Appeals Council complied with regulations when it denied claimant's request for review without articulation because it

---

[3] 20 C.F.R. § 404.970(b) provides,

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

considered the new evidence (a treating source's medical source statement), included the evidence on the exhibit list and made it part of the transcript); *Graley*, 2015 WL 3935953, at *14.

Here, the Appeals Council stated that it denied Cox's request for review of the ALJ's decision (Tr. 1) and made Dr. Batenga's opinion part of the record (Tr. 4, 407-421).  Cox concedes that the Appeals Council denied his request for review (Doc. 15, p. 3) and made his new evidence part of the record (Doc. 15, p. 14; Doc. 18, p. 1).  The Appeals Council was not required to do more.

In support of his argument that the "Appeals Council's notice and order did not adequately explain the evaluation of the FCE/Dr. Batenga report," Cox relies on *Culver v. Astrue*, 924 F.Supp.2d 1295, 1302 (N.D.Ala. 2013), which he characterizes as providing that "when a claimant properly presents new evidence, and the Appeals Council denies review, the Appeals Council must show in its written denial that it adequately evaluated the new evidence, citing *Epps v. Harris*[,] 624 F.2d 1267, 1273 (5th Cir. 1980)."  Doc. 15, pp. 14.  The Court is not persuaded by Cox's argument and reliance upon *Culver*.  As the Fifth Circuit later observed, *Epps*, upon which *Culver* relied, dealt with an Appeals Council decision that granted review and affirmed the ALJ's decision; it was not a case where the Appeals Council denied a claimant's request for review.  *See Sun v. Colvin*, 793 F.3d 502, 511 (5th Cir. 2015) ("It is significant, however, that *Epps* involved the AC's affirmance and adoption of the ALJ's decision, rather than the AC's denial of a request for review."); *Parks*, 783 F.3d at 853 ( "*Epps* arose in a different procedural context, where the Appeals Council *affirmed* the decision of the administrative law judge. *Epps* has little bearing on a denial of a request for review." (Emphasis in original; citation

and internal quotation marks omitted)).[4]  Here, the Appeals Council denied Cox's request for

review and, thus, *Epps* and *Culver* (which failed to make that distinction) are inapposite.

### C. The ALJ did not improperly rely on the opinions of the state agency reviewers and the consultative examiner[5]

In support of his assertion that the ALJ's RFC assessment was not supported by

substantial evidence, Cox argues that the ALJ improperly relied upon the two state agency

reviewers and the opinion of consultative examiner Dr. Amanambu.  Doc. 15, p. 14.  He submits

that Dr. Amanambu "had none of the treating sources [sic] records to review" and "none of those

three medical opinions were based on a review of the complete case record."  Doc. 15, p. 14.

Cox contends that "With the FCE/treating physician's opinion by Dr. Batenga, the ALJ could not

rely on the three state agency physicia[ns'] opinions to deny this claim.  Doc. 15, pp. 14-15.  In

support, he cites the following portion of SSR 96-6p:

> In appropriate circumstances, opinions from State agency medical and psychological
> consultants and other program physicians and psychologists may be entitled to greater
> weight than the opinions of treating or examining sources. For example, the opinion of a
> State agency medical or psychological consultant or other program physician or
> psychologist may be entitled to greater weight than a treating source[']s medical opinion
> if the State agency medical or p[s]ychological consultant's opinion is based on a review
> of a complete case record that includes a medical report from a specialist in the
> individual's particular impairment which provides more detailed and comprehensive
> information than what was available to the individual's treating source.

---

[4]  Moreover, when *Epps* was decided, in 1980, the Appeals Council was required to discuss its reasons when it denied a claimant's request for review; this requirement was suspended in 1995.  *See* HALLEX section I–3–5–90, 2001 WL 34096367 (suspending "the requirement for a detailed discussion of additional evidence and for specific responses to contentions in denial notices"); *Higginbotham v. Barnhart*, 405 F.3d 332, 335 n. 1 (5th Cir. 2005) (noting, "the requirement of a detailed discussion of additional evidence [in an Appeals Council determination] was suspended by a memorandum from the Executive Director of Appellate Operations dated July 20, 1995.").

[5]  Cox does not argue that the ALJ failed to follow the treating physician rule with respect to his discussion of Dr. Batenga's narrative of Cox's first FCE.  Indeed, Cox does not even acknowledge that Cox had an FCE with Dr. Batenga sometime prior to September 2011, either in his opening brief or his brief in reply, despite the Commissioner raising the point in her brief.  *See, e.g.*, Doc. 15, p. 17 (Cox's opening brief explaining that Cox requested an FCE in 2010 but "[t]he FCE was not performed until July 9, 2014, more than four (4) years after Mr. Cox began requesting a referral for the procedure.").

1996 WL 374180, at *3; Doc. 15, p. 15.

Cox's claim that the ALJ erred in relying on the non-treating source opinions over the "FCE/treating physician's opinion by Dr. Batenga" is misplaced because Dr. Batenga's second FCE on which Cox relies did not exist at the time of the ALJ's decision.[6]  An ALJ does not err when he does not consider an opinion that does not exist.  Finally, Cox's assertion that the ALJ erred in relying upon the opinions of the state agency reviewers and consultative examiner because these physicians did not have the complete record is undeveloped and, therefore, unpersuasive.  Cox does not describe what "treating sources [sic] records" these physicians did not have and what, exactly, was missing from "the complete case record."  Doc. 15, p. 14. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."  *McPherson v. Kelsey*, 125 F.3d 989, 995–996 (6th Cir. 1997) (internal citations omitted).  In sum, Cox fails to show that the ALJ's decision is unsupported by substantial evidence.  Accordingly, the ALJ's decision must be affirmed.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) (the Commissioner's decision must be affirmed if substantial evidence supports the ALJ's conclusion).

---

[6]  Again, the Court notes that Cox is not arguing that the ALJ erred with respect to his treatment of Dr. Batenga's "two narrative accounts of the basic results of a FCE [the first FCE] that the claimant attended."  Tr. 35.  First, Cox does not recognize that this evidence (Dr. Batenga's first FCE) exists and, second, the results of the evaluation showed no major functional limitations and only a restriction from "heavy lifting/activities."  Tr. 35.  Cox does not argue, nor can it be said, that limiting him to light work, as the ALJ did, was inconsistent with Dr. Batenga's restriction from "heavy lifting/activities."

## VI. Conclusion

For the reasons set forth herein, the Commissioner's decision is **AFFIMRED**.


Dated: August 2, 2016

Kathleen B. Burke
United States Magistrate Judge